636 So.2d 123 (1994)
BROWARD COUNTY, Appellant,
v.
James H. WAKEFIELD, Donald C. Austin, and Le Nease Austin, Appellees.
No. 93-0617.
District Court of Appeal of Florida, Fourth District.
April 20, 1994.
Rehearing Denied May 26, 1994.
John J. Copelan, Jr., County Atty. for Broward County, and Anthony C. Musto, Asst. County Atty., Fort Lauderdale, for appellant.
Barbara A. Curtis of Curtis & Curtis, P.A., Fort Lauderdale, and Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, for appellees.
FARMER, Judge.
Broward County appeals an order finding a "taking" in an inverse condemnation action. We find the order appealable as a non-final order determining liability in favor of a party seeking affirmative relief. See Fla.R.App.P. 9.130(a)(3)(C)(iv).
This is another aviation noise, inverse condemnation case concerning Broward County's Fort Lauderdale-Hollywood International Airport [FLHIA]. Plaintiffs sought to establish that ordinary aircraft noise emanating *124 from FLHIA has effected a taking of their nearby properties, lying 2,600 feet north of one of the runways. Broward County Ordinance 82-34 establishes four specific noise zones around FLHIA.[1] The subject properties are within an area designated by Ordinance 82-34 as "Noise Zone C".[2]
The noise levels described in ordinance 82-34 were based on a 1980 federal study in which a computer program made projections of average noise levels emitted by operating aircraft during a typical 24-hour period. In the words of Ordinance 82-34:
"Such noise zones are shown on the Noise Exposure Map for [FLHIA] * * * and shows the noise contours based on a projection of future noise environments arising from aircraft flight operations at [FLHIA] through the year 1990."
At the trial on the landowners' inverse condemnation claim, Broward County sought to adduce the testimony of an expert to show that more recent studies with more advanced programs would show that the actual noise levels in zone C were less than stated in Ordinance 82-34. The trial judge refused to permit the expert witness to testify. He explained:
"They had an underlying proven fact when they had the ordinance so they are stuck with it. The ordinance is what the ordinance says it is. You are totally correct. In Florida it is unconstitutional to legislatively create a true irrebuttable presumption but that is not what you have done here. You have taken a fact and taken that established scientific fact and in essence enacted it into law. You haven't taken a fact and then presumed from that fact an irrebuttable presumption of something. You have taken a scientific fact and transformed it from a scientific fact generally speaking into a law and therefore you are stuck with it. * * * For me to allow the expert to testify otherwise would be to allow the expert to amend the statute when he has no constitutional authority. He is not an elected body. * * * You have by ordinance established the level and there can be no evidence admitted to show a different level of sound because in essence to do that would be an amendment of the ordinance by the court, allowing it to be done in violation of the law. I take the law as I find it."
The court thereupon granted plaintiff's motion to strike [sic] the proposed testimony of the expert witness. The case proceeded to trial, and the court found that a taking had occurred.
We agree with the County that it was error to exclude the testimony of its expert witness.[3] Ordinance 82-34 merely gave notice to present and future occupiers of land that aviation noise in the area of the zones was thought to be at certain levels as projected by the federal study. Indeed, the ordinance expressly stated:
"[T]he purpose of establishing said noise zones is to give notice to current residents and future residents that their property is within a noise zone that is affected by the aircraft noise generated from [FLHIA] and that said noise shall be a factor in the quality of their lives."
As we have already shown, later in the text, ordinance 82-34 clearly states that it "shows *125 the noise contours based on a projection [e.s.] of future noise environments arising from aircraft flight operations at [FLHIA] through the year 1990." We are thus unable to read into this ordinance any presumption of any particular noise level. The only presumption reasonably attributable to the text is that the areas designated do indeed suffer from noise arising from aircraft flight operations at FLHIA.
The level of noise at any particular place is quite another matter. Ordinance 82-34 labels the noise levels as "projections". The term "projection" is obviously a tentative appellation, emphasizing that in reality the actual level at any place, at any time (especially after 1990), might be different. There is thus no logical basis from this text to suppose that any party might be precluded from showing what that reality is. One way might be simply to go out to "Blackacre" and measure the sound there with recording devices and measuring equipment; another might be through computer models established by expert testimony. Here the trial judge deprived the County of the latter method by his interpretation of the ordinance.
We reverse and remand for a new trial on the taking issue in which neither party shall be precluded from offering the kind of evidence excluded at the last trial.
REVERSED.
HERSEY and POLEN, JJ., concur.
NOTES
[1] Ordinance 82-34 is codified at Broward County, Fla., Code ch. 2, art. III, div. 4, §§ 2-101-2-104 (1982).
[2] Without going into the technical data, let us say that the noise level in zone C is loud, and let it go at that.
[3] We reject the landowners' argument that the pretrial stipulation established conclusively that the actual noise level at their properties was as specified in ordinance 82-34, as to which the court had taken judicial notice. Nor do we agree that the evidence sought to be adduced by Broward County would have contradicted the court's judicial notice of ordinance 82-34. As the text of this opinion makes clear, ordinance 82-34 merely gave notice that certain areas surrounding FLHIA suffered from aviation operations noise, and that the level of noise in the identified zones was believed, on account of a federal study, to be at certain levels. We do not construe this ordinance to have the effect that the owners' counsel so effectively argued at trial. If it were deemed, in spite of its text, to establish the actual noise level for the area within its various zones, the ordinance would effectively become an ipso facto condemnation of all property located in the areas. We construe statutory text; we do not conjure unarticulated legislative intent.